**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **STORMONT-VAIL REGIONAL HEALTH CENTER** 1500 SW 10th Avenue Topeka, KS 66604-1353         Plaintiff,         v. **ROBERT F. KENNEDY, JR.**, In his Capacity as Secretary of the U.S. Department of Health and Human Services 200 Independence Avenue, S.W. Washington, D.C. 20201         Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) )      Case No. |

**<u>COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION
ON MEDICARE REIMBURSEMENT</u>**

COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

**INTRODUCTION**

1.      This civil action is brought by Stormont-Vail Regional Health Center (hereinafter "Plaintiff," "Provider," or "Plaintiff Hospital") against the Secretary for the United States Department of Health and Human Services ("HHS")[1] for judicial review following a final decision rendered on March 24, 2026 by the Provider Reimbursement Review Board ("PRRB" or "Board"), a component of HHS (attached hereto as **Exhibit A-1**). Judicial review is sought arising from the Board's dismissal of PRRB Case No. 20-1619. The basis for this lawsuit is the Secretary's willful refusal to follow clear, unambiguous federal law. Plaintiff Hospital specifically challenges the Board's dismissal of Plaintiff's issue pertaining to the Medicare Administrative Contractor's ("MAC") refusal to include all Medicaid eligible days, including section 1115 waiver days, in the Medicaid Fraction for the cost year at issue in this case (fiscal year end, or "FYE" September 30, 2016). (Attached hereto as **Exhibit A-2**).

> [*The reader may note for clarity and confusion avoidance that in each continuation page header of Exhibit A-2, the references made to the relevant FYE as well as the hospital's Medicare provider number (in parenthesis) are erroneous. The information set forth in the subject line at page 1 of Exhibit A-2, however, is accurate and correct.*]

2.      This timely action arises under Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395 *et seq.* (the "Medicare Act"), 5 U.S.C. §§ 706 *et seq.* (the Administrative Procedure Act or "APA"), 28 U.S.C. § 1361 (mandamus), and other authorities. The Medicare payments here pertain to how inpatient hospital days should be counted for purposes of calculating the Plaintiff Hospital's Medicare Disproportionate Share Hospital ("DSH") payments for the fiscal year ("FY") ending on September 30, 2016.

---

[1] The Secretary is the proper Defendant in this appeal. *See* 42 C.F.R. § 405.1877(a)(2).

COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

3.      The Board issued its final decision by letter dated March 24, 2026 (Exh. A-1) at which time the Board affirmed that Plaintiff's administrative appeal case was deemed closed. The Secretary and the MAC's refusal to adhere to the clear dictates of the Centers for Medicare & Medicaid Services ("CMS") Manual Instructions System, Change Request 12669, Transmittal No. 11912 (March 16, 2023) (attached as **Exhibit B**), provides an independent legal basis, mandamus, for this action.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction under 42 U.S.C. § 1395oo(f) (appeal of final Medicare program agency decision), 28 U.S.C. §§ 1331 (federal question), and 1361 (mandamus). *See Heckler v. Ringer*, 466 U.S. 602, 616-17 (1984); *Monmouth Med. Ctr. v. Thompson*, 257 F.3d 807,811, 813-15 (D.C. Cir. 2001); *United States v. Monzel*, 641 F.3d 528, 534 (D.C. Cir. 2011). Jurisdiction also is available under 28 U.S.C. § 1331 where the agency renders a final determination for which there is no administrative appeal available. *Am. Chiropractic Ass'n v. Leavitt*, 431 F.3d 812, 816 (D.C. Cir. 2005).

5.      Venue lies in this district pursuant to 42 U.S.C. § 1395oo(f)(1) and 28 U.S.C. § 1391(e)(1).

## PARTIES

6.      Plaintiff hospital, located at 1500 SW 10th Avenue, Topeka, KS 66604-1353, had at all relevant times a Medicare provider agreement and was eligible to participate in the Medicare program under Provider No. 17-0086. At all times during the relevant time periods pertinent to this complaint, Plaintiff furnished inpatient and outpatient hospital services to Medicare patients.

7.      Defendant has offices at 200 Independence Avenue, SW, Washington DC 20201 and is the federal officer responsible for the administration of the Medicare program. As such, Defendant Robert F. Kennedy, Jr. is sued in his official capacity as Secretary of HHS.

COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

## GENERAL BACKGROUND OF THE MEDICARE PROGRAM

8.      The Medicare Act establishes a system (the "Medicare program") of health insurance for the aged, disabled, and individuals with end-stage renal disease. 42 U.S.C. § 1395c. The Medicare program is federally funded and administered by the Secretary through CMS and its contractors. 42 U.S.C. § 1395kk(a); 42 Fed. Reg. 13262 (Mar. 9, 1977). CMS implements the Medicare program, in part, through rulemaking. *See* 42 C.F.R. § 401.108. In addition to the substantive rules published by the Secretary in the Code of Federal Regulations and the Rulings, CMS publishes other interpretative rules implementing the Medicare program, which are usually compiled in CMS manuals. The Secretary also issues other sub-regulatory guidance which generally do not have the force and effect of law. This civil action involves Medicare Part A. Part A provides coverage and payment for, among others, inpatient hospital services on a fee-for-service basis. 42 U.S.C. §§ 1395c to 1395i-6. Such items/services are furnished to Medicare beneficiaries by providers of services, including hospitals, that have entered into written provider agreements with the Secretary pursuant to 42 U.S.C. § 1395cc. Providers are paid (reimbursed) by CMS through MACs. *See* 42 U.S.C. § 1395kk-1(a).

9.      Each Medicare-participating hospital is assigned to a MAC. 42 U.S.C. § 1395kk-1(a)(3)(B). The amount of Medicare Part A payment owed to a hospital for services furnished to Medicare beneficiaries is determined by its MAC based on instructions from CMS. *See* 42 C.F.R. § 405.1803.

10.     Effective with cost reporting years beginning on or after October 1, 1983, hospitals are reimbursed under the Hospital Inpatient Prospective Payment System ("IPPS") for inpatient hospital operating costs. *See* 42 U.S.C. § 1395ww(d). Under IPPS, Medicare payments for hospital

COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

operating costs are not based directly on the costs actually incurred by the hospitals. Rather, they are based on predetermined, nationally applicable rates based on the diagnosis of the patient determined at the time of discharge from the inpatient stay, subject to certain payment adjustments. *See id.* One of these adjustments is the Medicare DSH payment. *See* 42 U.S.C. § 1395ww(d)(5)(F).

11.     Congress enacted the DSH adjustment in recognition of the relatively higher costs associated with providing services to low-income patients. These higher costs have been found to result in part from the poorer health of those patients. The DSH adjustment provides additional Medicare reimbursement to hospitals for the increased cost of providing such services.

12.     Hospitals that treat a disproportionately large number of low-income patients are entitled by statute to a DSH adjustment, in addition to standard Medicare payments. 42 U.S.C. § 1395ww(d)(5)(F). The DSH program was in effect beginning with discharges on or after May 1, 1986. Pub. L. No. 99-272, § 9105, 100 Stat. 158-60 (Apr. 7, 1986).

13.     There are two methods of determining qualification for a DSH adjustment: the more common "proxy method" and the less common "Pickle method." *See* 42 U.S.C. § 1395ww(d)(5)(F)(i)(I)-(II). Plaintiff Hospital's DSH calculations at issue were made using the proxy method, under which entitlement to a DSH adjustment, as well as the amount of the DSH payment, is based on a hospital's disproportionate patient percentage (hereinafter, "DPP"). 42 U.S.C. § 1395ww(d)(5)(F)(v)-(vi).

14.     The DPP is the sum of two fractions, which are designed to capture the number of low-income patients a hospital serves on an inpatient basis by counting the number of days that low-income patients receive inpatient services in a given fiscal year ("inpatient days"). 42 U.S.C. § 1395ww(d)(5)(F)(vi). Thus, the two fractions serve as a "proxy" of a hospital's low-income patients, rather than having CMS count the actual number of those patients.

15.     The first fraction, referred to as the "Medicare Fraction," accounts for inpatients who are current Medicare Part A recipients whilst *also* being entitled to Supplemental Security Income ("SSI") benefits, a federal low-income supplement. The Medicare Fraction is defined by statute as follows:

> [T]he fraction (expressed as a percentage), the numerator of which is the number of such hospital's patient days for such period which were made up of patients who (for such days) were entitled to benefits under part A of this subchapter and were entitled to supplementary security income benefits (excluding any State supplementation) under subchapter XVI of this chapter, and the denominator of which is the number of such hospital's patient days for such fiscal year which were made up of patients who (for such days) were entitled to benefits under Part A of this subchapter[.]

42 U.S.C. § 1395ww(d)(5)(F)(vi)(I). The Medicare Fraction, therefore, is the percentage of a hospital's Medicare Part A-entitled inpatients who were also entitled to SSI benefits at the time that they were receiving inpatient services at the hospital.

16.     The second fraction, referred to as the "Medicaid Fraction," is defined by statute as follows:

> [T]he fraction (expressed as a percentage), the numerator of which is the number of the hospital's patient days for such period which consist of patients who (for such days) were eligible for medical assistance under a State plan approved under title XIX, but who were not entitled to benefits under part A of this subchapter, and the denominator of which is the total number of the hospital's patient days for such period.

42 U.S.C. § 1395ww(d)(5)(F)(vi)(II).

17.     The Medicaid Fraction, therefore, is intended to account for hospital inpatients "…who were not entitled to benefits under [Medicare] [P]art A," who were "…eligible for medical assistance…" under the Medicaid State plan at the time that they were receiving inpatient services at the hospital. The Medicaid Fraction is at issue in this case.

COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

18.     The statute further provides for purposes of determining the Medicaid Fraction "…the Secretary may, to the extent and for the period the Secretary determines appropriate, include patient days of patients not so eligible but who are regarded as such because they receive benefits under a demonstration project approved under subchapter XI."  42 U.S.C. §1395(d)(5)(F)(vi)(II). Patient days of patients who receive benefits under a demonstration project approved under subchapter XI of the Social Security Act are commonly referred to as "section 1115 waiver days" (because of the Secretary's waiver or demonstration project authority under section 1115 of the Social Security Act). The Secretary's non-inclusion of section 1115 waiver days in Plaintiff Hospital's Medicaid Fraction for its 2016 fiscal year ("FY") is at the heart of this action. As discussed, *infra.,* section 1115 waiver days *are* in fact Medicaid **eligible** days, and need not be distinguished from any and all other Medicaid **eligible** days when presenting an appealable issue before the Board. (*See*, *e.g.*, *Bethesda Health, Inc. v. Azar*, 389 F. Supp. 3d 32 (D.D.C. 2019), *aff'd*, 980 F.3d 121, 122 (D.C. Cir. 2020) and CMS Change Request 12669, Transmittal No. 11912 (March 16, 2023). (Ex. B at 3)).

## THE RELEVANT MEDICARE APPEALS PROCESS

19.     At the close of its fiscal year, a provider must submit a cost report to the MAC showing the costs it incurred during the fiscal year and the portion of those costs to be allocated to Medicare. 42 C.F.R. § 413.20. For Medicare, each hospital's MAC is required to analyze and audit the hospitals annually submitted Medicare cost report and issue a Medicare Notice of Amount of Program Reimbursement ("NPR"), which informs the hospital of the final determination of its total Medicare reimbursement for the hospital's fiscal year. 42 C.F.R. § 405.1803. In addition to including costs on its cost report, a hospital also is required to make a claim, or alternatively self-disallow, for any modification to its basic IPPS payment adjustment, such as the DSH adjustment.

20.    The Medicare Act provides that if a hospital is dissatisfied with its MAC's final determination (or any revised final determination) of the hospital's total Medicare program reimbursement for a fiscal year, as reflected in its NPR, and the hospital satisfies the amount in controversy requirements (not an issue in this case), the hospital has a right to obtain a hearing before the PRRB by filing an appeal within 180 days of receiving its NPR (or any revised NPR). 42 U.S.C. § 1395oo(a). The statute allows a hospital that is dissatisfied with a final determination of the Secretary as to the amount of the payment under subsection (b) or (d) of 42 U.S.C. § 1395ww to obtain a PRRB hearing by requesting the hearing within 180 days after notice of the Secretary's final determination. 42 U.S.C. § 1395oo(a)(1)(A)(ii), (a)(3).

21.    The regulations interpret the statutory requirements by stating that "…the date of receipt by the Board of the provider's hearing request must be no later than 180 days after the date of receipt by the provider of the final contractor or Secretary determination." 42 C.F.R. § 405.1835(a)(3).

22.    In addition to having the authority to make substantive decisions concerning Medicare reimbursement appeals, the PRRB is authorized to decide questions relating to its jurisdiction and procedure. The decision of the PRRB on substantive or jurisdictional issues constitutes final administrative action unless the Secretary reverses, affirms, or modifies the decision within 60 days of the hospital's notification of the PRRB's decision. 42 U.S.C. § 1395oo(f)(1); 42 C.F.R. §§ 405.1875 and 405.1877. The Secretary has delegated authority under the statute to review PRRB decisions to the CMS Administrator. Thus, the Secretary's final administrative decision for purposes of judicial review is either the decision of the PRRB or the decision of the CMS Administrator after review of the PRRB's decision.

COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

23.    A hospital may obtain judicial review by filing suit in the U.S. District Court for the judicial district in which the hospital is located within 60 days of receipt of the Secretary's final administrative decision. 42 U.S.C. § 1395oo(f)(1). Pursuant to 42 C.F.R. § 405.1801(a)(1)(iii), the date of receipt by a party involved in proceedings before the PRRB is presumed to be five days after the date of issuance of a PRRB document. As such, the deadline in this case to seek judicial review is May 28, 2026. This filing is therefore timely.

### APPLICABILITY OF THE APA TO MEDICARE APPEALS

24.    Under 42 U.S.C. § 1395oo(f)(1), an action brought for judicial review of final agency action involving PRRB appeals "...shall be tried pursuant to the applicable provisions under chapter 7 of title 5" of the U.S. Code, which contains the APA. Under the APA, a "...reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]" 5 U.S.C. § 706(2)(A). Further, a "...reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . unsupported by substantial evidence in a case . . . reviewed on the record of an agency hearing provided by statute[.]" 5 U.S.C. § 706(2)(E).

### LITIGATION OVER SECTION 1115 WAIVER DAYS AND THE SECRETARY'S ACQUIESCENCE IN FIFTH AND D.C. CIRCUIT DECISIONS

25.    In *HealthAlliance Hospitals v. Azar*, 346 F. Supp. 3d 43 (D.D.C. 2018), the Court rejected the Secretary's assertion that for hospital days under a section 1115 waiver to be included in the Medicaid Fraction, the terms of waiver agreement between the State Medicaid agency and the Secretary must contain an explicit statement that patients covered by the waiver are "…eligible for inpatient hospital services." *See id.* at 46. That Court disagreed. *See id.* at 46-47. According to the *HealthAlliance* court:

COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

> [i]t is clear from the plain language of the regulation's text [at 42 C.F.R. § 412.106(b)(4)(i)] that patients who are eligible to receive comprehensive medical care through an insurance program authorized under a section 1115 waiver (as evidenced by their eligibility for inpatient hospital services) are to be included in the Medicare reimbursement formula, and whether or not the waiver agreement through which the Secretary authorized the program *says* anything about their eligibility for inpatient hospital services is irrelevant to the calculation of a hospital's disproportionate share hospital adjustment.

*Id.* at 47. This remains true in this dispute.

26.    A similar issue was presented in *Forrest General Hospital v. Azar*, 926 F.3d 221 (5th Cir. 2019). The Secretary claimed an uncompensated care pool related to Hurricane Katrina was not part of a section 1115 waiver. *See id.* at 232. In disagreeing, the Fifth Circuit found the

> …excellent opinion in *HealthAlliance Hospitals, Inc. v. Azar* extremely persuasive. That opinion convincingly explains why the law governing the inclusion of section 1115 waiver patient days in the Medicaid fraction is straightforward: the plain regulatory text demands that such days be included—period.

*Id.* at 234 (citations omitted). The Fifth Circuit also held that the statute was unambiguous and noted with respect to 42 C.F.R. § 412.106(b)(4) that, "[w]hat does *not* matter for purposes of this regulation is what the plan documents say about eligibility for particular services." *See Forrest General at* 228-229. Following *Forrest General*, the Secretary continued to litigate, and lose, the issue whether days associated with patients who were covered under a section 1115 waiver that included an uncompensated care pool, and which <u>did not specifically mention</u> inpatient hospital benefits, should be included in the Medicaid Fraction. *See, e.g., Bethesda Health, Inc. v. Azar*, 389 F. Supp. 3d 32 (D.D.C. 2019), *aff'd*, 980 F.3d 121, 122 (D.C. Cir. 2020).

27.    As a result of those losses, CMS issued guidance acquiescing to the Fifth Circuit and D.C. Circuit decisions. (*See* Ex. B). The manual instructions provide that upon a hospital submitting a listing of its section 1115 waiver days, the hospital's MAC must do the following:

> [f]or cost reports that are open via a [] (PRRB) appeal that has not yet been heard before the PRRB, [s]ection 1115 days will be reviewed through the normal

COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

Administrative Resolution process within 24 months of the CR implementation date. In order for the Medicare Administrative Contractor (MAC) to consider the providers' Section 1115 days in recalculation of the Medicaid fraction, the following review shall take place, only as deemed necessary by the Uniform Desk Review process or Administrative Resolution process:

1. For providers with patients whose inpatient stay is covered by a Section 1115 waiver program funding pool, which pays health care providers that provide uncompensated care to patients who are uninsured or underinsured and is matched by Title XIX federal funds, the MAC shall review the State's Section 1115 program documents to determine the method by which the provider identifies eligible inpatient stay days.

2. The MAC shall select a sample of accounts from the provider's submitted Section 1115 log for further review.

3. The MAC shall request documentation from the provider for the selected sample and review the documentation to ensure that: a) the provider has accurately included the inpatient stay in the Section 1115 waiver program for reimbursement through the funding pool based on the provider's Section 1115 approved program documents; and b) has accurately included the inpatient stay on the Section 1115 log.

4. The MAC shall review the provider's applicable documentation that details the patient's length of stay and the acute-care unit that the patient's stay occurred to verify the patient's length of stay in an inpatient acute section of the hospital.

(*Id* at 4).

28.    In the FY 2024 IPPS rulemaking, the Secretary proposed and finalized new and restrictive regulations on including section 1115 waiver days in the Medicaid Fraction; however, these regulations are prospective only. *See* 88 Fed. Reg. 58640, 59017 (Aug. 28, 2023) ("Finally, we are finalizing as proposed that our revised regulation would be effective for discharges occurring on or after October 1, 2023").

### SPECIFIC FACTS PERTAINING TO THIS CASE

A.    *Dismissal of Section 1115 Waiver Days "Issue"*

29.    On November 14, 2019, the MAC issued an NPR for Plaintiff's cost year ending September 30, 2016. On May 1, 2020, the Board received Plaintiff's individual appeal request

11

COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

(attached with issue-specific documents and NPR as **Exhibit C**), appealing its DSH adjustment. Plaintiff timely appealed the MAC's non-inclusion of Medicaid eligible days, stating that "[t]he MAC, contrary to the regulation, failed to include *all Medicaid eligible days, including but not limited to* Medicaid paid days, unpaid eligible days, eligible days adjudicated and processed after the cutoff date and all out of State eligible days in the Medicaid Percentage of the Medicare DSH calculation." (Ex. C at 11) (emphasis added). The audit adjustment numbers[2] cited as the basis for Plaintiff's appeal of the "Medicaid Eligible Days" issue indicated that Plaintiff was not only appealing the claimed estimated Medicaid eligible days[3] and the resulting allowable DPP,[4] it was also appealing the "Protested amounts (nonallowable cost report items)"[5] and the issues underlying such amounts, including an estimated amount of "1115 waiver days" it believes should be included as Medicaid eligible days in the "Medicaid fraction."[6] Both the italicized language and unquestionably appealed audit adjustments above demonstrate that Plaintiff appealed *all* Medicaid eligible days including section 1115 waiver days.

30.    Notwithstanding the noted language and audit adjustments, the Board, on March 23, 2026, dismissed Plaintiff's appeal of what it termed the "Section 1115 Waiver days issue." (Ex. A-2 at 11,16). The Board provided one primary reason for its dismissal, stating "[b]ecause the Provider did not raise the Section 1115 Waiver days prior to the deadline to add issues, and the fact that it is a distinct issue, the Board finds that the issue was not properly or timely appealed. The DSH Medicaid eligible days issue as stated in the original appeal request cannot be construed to include Section 1115 Waiver days." ( *id.* at 13). That is, the Board contends section 1115 waiver

---

[2] "Audit Adjustment Number(s): 8,22,31,34,39,40,s-d," (*id.*)
[3] Adjustment Number 39, (Ex. C at 30)
[4] Adjustment Number 40, (*id.*)
[5] Adjustment Number 34 and s-d ("self-disallowed" or "protested" items), (*id.* at 28)
[6] *See id.* at 7.

COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

days are not Medicaid eligible days but are instead a separate and distinct issue which, the Board claimed, the Provider failed to include in its initial appeal request. *Id.*

31.    The Board proffered a few alternative rationales to support its decision, but both fail to do so. (*See id.* at 13-15). It claimed that: (1) "…there is no indication that any Section 1115 Waiver days were included with the as-filed cost report which, if true, would make them an unclaimed cost and provide an independent basis for dismissal;" and (2) "…the Provider failed to develop its PPP, notwithstanding 42 C.F.R. §§ 405.1853(b)(2)-(3) and 412.106(b)(4)(iii) [sic] and Board Rule 25, as applied via Board Rule 27.2." (Ex. A-2 at 15).

32.    The Board relies upon a fabricated differentiation unsupported by any statutory language, claiming that "…Section 1115 Waiver days are not *traditional* Medicaid eligible days…" in support of its contention that such waiver days are somehow an issue that must be regarded and therefore addressed as "separate and distinct" from all other Medicaid eligible days. (*See* Ex. A-2 at 11-12); (emphasis added). To be clear, a *Medicaid eligible* day that the Board conveniently distinguishes as either being *traditional or not traditional* for purposes of deciding the adequacy of a provider's presentment of its appeal is simply not the legal standard that should logically be imposed. Rather, whether a patient day is "regarded as" a Medicaid "*eligible*" day is the *sole* and appropriate standard required, as set forth within applicable law and regulations. (*See*, *Forrest Gen. Hosp. v. Azar*,[7] *Bethesda Health, Inc., v. Azar*,[8] *supra.*, and Ex. B at 3).

B.    *Substantial Evidence Supports Plaintiff's Position*

33.    As mentioned *supra,* "…the law governing the inclusion of § 1115 waiver patient days in the Medicaid fraction is straightforward: The plain regulatory text demands that such days

---

[7] *Forrest General Hospital v. Azar*, 926 F.3d 229 (5th Cir. 2019)
[8] *Bethesda Health Inc., v. Azar*, 389 F. Supp. 3d 32, (D.D.C. 2019), *aff'd*, 980 F.3d 121 (D.C. Cir. 2020)

COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

be included—period."[9] This statutory and regulatory interpretation was affirmed by the court in *Bethesda Health Inc., v. Azar*,[10] and was accepted by CMS in its publication of Change Request 12669, Transmittal No. 11912 (March 16, 2023). (Ex. B at 4). As such, there is no statutory difference between section 1115 waiver days and Medicaid eligible days in terms of their inclusion in the numerator of the Medicaid Fraction and administrative appeals thereof.

34.    The Board's distinction of a purely *fictional* "Section 1115 Waiver days <u>issue</u>" was disingenuous. (Emphasis added). The <u>issue</u> properly before the Board in Plaintiff's administrative appeal was the inclusion of <u>all</u> Medicaid eligible days for purposes of calculating DSH reimbursement, which would definitionally include section 1115 waiver days which were identified as such in Plaintiff's protested items. (*See* Ex. C at 7).

35.    The regulations at 42 C.F.R. § 405.1835 contain requirements for appealing an <u>issue</u> and a time limit on adding an <u>issue</u> – not on "sub-issues"[11] or "components" of an <u>issue</u>. Both a June 25, 2004, proposed rule (69 Fed. Reg. 35716) and a May 23, 2008, final rule (73 Fed. Reg. 30190) support that an "issue" is encapsulated by a specific cost report adjustment. They do not slice and dice an "issue" into component parts, including the specific reason why Medicaid eligible days were not counted in the numerator of the Medicaid Fraction of the DPP.

36.    For example, the proposed rule states that:

> … to preserve its appeal rights, a provider must either claim an item on its cost report where it is seeking reimbursement that it believes to be in accordance with Medicare policy, or self-disallow the item where it is seeking reimbursement that it believes may not be in accordance with Medicare policy … Note that we are using the term "item" instead of "cost" to emphasize that our proposed policy would refer to determinations of amounts due to providers subject to a prospective system

---

[9] *Forrest General Hospital v. Azar*, 926 F.3d 234 (5th Cir. 2019) (referring to the opinion in *HealthAlliance Hospitals v. Azar*, 346 F. Supp. 3d 43 (D.D.C. 2018)).

[10] *Bethesda Health Inc., v. Azar*, 389 F. Supp. 3d 32, (D.D.C. 2019), *aff'd*, 980 F.3d 121 (D.C. Cir. 2020)

[11] The Board claims it dismissed the "*alleged* Section 1115 Waiver days sub-issue" of Plaintiff's administrative appeal. (Ex. A at 15) (emphasis in original).

COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

as well as determinations of reimbursement due to providers that are paid under cost reimbursement principles.

69 Fed. Reg. at 35722. Similar language appears in the final rule at 73 Fed. Reg. 30194. A MAC's cost report determination is synonymous with an "adjustment." In this case, the same adjustments[12] to so-called "*traditional* Medicaid eligible days" also govern Medicaid eligible days associated with beneficiaries covered under a section 1115 waiver. (Ex. A-2 at 12). To the extent that the regulations were interpreted as requiring providers to appeal "sub-issues" or "components" of issues, the regulations would impermissibly restrict the PRRB's jurisdiction as set forth in the statute. Even if such an interpretation were to be affirmed, the Provider's appeal request would be compliant with 42 C.F.R. § 405.1835 because, as explained *supra*, the Provider self-disallowed an estimated amount attributable to section 1115 waiver days which was then adjusted by the MAC in the NPR under appeal.

### C.    *The Board's Rule 8 Is Arbitrary and Invalid*

37.     Rule 8 of the August 29, 2018, version of the PRRB Rules—which provides that "…each contested component must be appealed as a separate issue…"—is internally inconsistent with Rule 7. Whereas Rule 8 refers to "components" of an issue, and gives section 1115 waiver days as an example, Rule 7.2.1 provides that, for purposes of identifying the "issue" under appeal, the provider needs to submit an "issue title and a concise issue statement…" that describes the cost report adjustment, including the cost report adjustment number, the controlling authority, why the cost report adjustment is incorrect, how the payment should be determined differently, the reimbursement effect, and the basis for jurisdiction before the PRRB. (*See* Ex. A-2 at 11-12). **Thus, Rule 8 is inconsistent with both the regulations *AND* Rule 7.**

---

[12] (*i.e.*, adjustment numbers 34, 39, and s-d adjusting the claimed estimated amounts attributable to self-disallowed Medicaid eligible days including section 1115 waiver days; Ex. C at 7, 28, 30)

COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

38.     Notwithstanding the paradoxical nature of PRRB Rules 7, 8, and the underlying regulations, in accordance with Rule 7.2.1 of the August 29, 2018, version of the PRRB Rules, the Provider appealed the "Disproportionate Share Hospital Payment - Medicaid Eligible Days" issue with respect to adjustment numbers 8, 22, 31, 34, 39, 40, and s-d from the adjustment report issued by the Provider's designated MAC in connection with the Provider's FY 2016 cost report. As stated *supra*, the s-d adjustment refers to all items self-disallowed or protested on the Provider's cost report, which includes a protested amount relating to an understated amount of Medicaid eligible days, specifically section "1115 waiver days," in the Provider's Medicaid Fraction. (*See* Ex. C at 7, 11).

39.     Whereas Rule 7 directs providers to Rule 8, Rule 8 directs the providers to Rule 7, making this type of circular reasoning a thinly veiled attempt to obfuscate providers rather than enlighten them. Indeed, all that is served by that confusion is an endless loop of inconsistent propositions, creating ambiguity and logically flawed explanations that leaves providers baffled.

40.     Moreover, Rule 8 is predicated on the supposed need "[t]o comply with the regulatory requirement…" regarding specifically identifying the items in dispute. Rule 8 proceeds from the misunderstanding that the regulations require "components" of an issue must be identified, when in fact, and as explained above, this is not true. For this reason alone, Rule 8's requirement to identify "components" of an issue is arbitrary and capricious, thus, invalid.

41.     The supposed requirement that a provider go further and specify not only DSH reimbursement, and not only the Medicaid eligible days portion of such reimbursement, but also the section 1115 waiver days component of Medicaid eligible days, is not found in the statute, but only in the PRRB rules. The Board has no authority to expand or constrict its jurisdiction given to

it by Congress. Its requirement that providers must describe "components" of issues simply to obtain a hearing conflicts with the statute and is facially invalid.

42.     In *Azar v. Allina Health Services et al.*, the Supreme Court held "…the phrase 'substantive legal standard,' which appears in § 13955hh(a)(2) and apparently nowhere else in the U. S. Code, cannot bear the same construction as the term 'substantive rule' in the APA…" and that a new policy that establishes or changes a "substantive legal standard" that affects Medicare benefits must be subject to the statutory process of public notice-and-comment rulemaking. *See Azar v. Allina Health Services et al.*, 587 U.S. 566, 579, (2019); *see also* 42 U.S.C. § 1395hh(b). The Supreme Court did not disturb the D.C. Circuit's holding below that "…the Medicare Act requires notice-and-comment rulemaking for any (1) 'rule, requirement, or other statement of policy' that (2) 'establishes or changes' (3) a 'substantive legal standard' that (4) governs 'payment for services.'" *Allina Health Servs. v. Price*, 863 F.3d 937, 943 (D.C. Cir. 2017). Nor did it disturb the D.C. Circuit's holding that "'[s]ubstantive law' is law that 'creates, defines, and regulates the rights, duties, and powers of parties.'" *Id*.

43.     Rule 8 of the August 29, 2018, version of the PRRB Rules—in effect at the time of this appeal and acts as a logical extension of Rule 8 of the August 21, 2008, version of the PRRB Rules—specifies that certain issues must be appealed separately. Rule 8 of the August 21, 2008, version of the PRRB Rules *changed* a "**substantive legal standard**" with respect to payments under the Medicare Act because it defines or regulates the rights of providers to proceed before the PRRB. As such, it should have but did not go through notice-and-comment rulemaking, and it along with all subsequent versions of Rule 8 are therefore invalid and should be vacated under clear Supreme Court precedent. *See*, *e.g.*, *Allina Health Services et al.*, 587 U.S. at 579.

COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

D.    *The PRRB's Alternative Reasons for Dismissal were Arbitrary and Capricious*

44.    First, the PRRB's assertion that it was an independent basis for dismissal that "…there is no indication that any 1115 waiver days were included with the as-filed cost report…" was arbitrary and capricious, not only because MACs frequently accept days identified *after* the cost report is filed, but also because the Provider explicitly self-disallowed a reimbursement amount for such days. (Ex. A-2 at 13; Ex. C at 7). The total count of Medicaid eligible days is a variable aspect of a hospital's cost report that depends on factors that can change after the hospital's initial cost report is filed. The inherent retroactive nature of Medicaid eligibility determinations means that a provider will never know which patients will eventually be "regarded as" Medicaid eligible for the purposes of calculating DSH reimbursement at the time of admission. As is the case with other Medicaid eligible days, the treatment of this variability likewise applies to section 1115 waiver days.

45.    Second, the Board complains that "[i]t was not until February 10, 2023 that the Provider filed a listing of days including the 1115 Waiver days. This submission was sent years after the Provider would have needed to submit its as-filed cost report for FYE 09/30/2016 and more than three years after the Provider had received its NPR."[13] This objection does not support the Board's dismissal decision, as the Provider was not required to supply such a listing with its as-filed cost report in order to appeal its self-disallowed section 1115 waiver days. CMS even acknowledges this in its 2008 Final Rule[14] where it clarifies that "…if the provider does decide to appeal [a self-disallowed] item, it should estimate the reimbursement effect of the item at that time."[15]

---

[13] (Ex. A-2 at 14).
[14] 73 Fed. Reg. 30190 (May 23, 2008)
[15] *Id.* at 30198.

COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

46.    Third, with respect to the proper development and identification of "…the Section 1115 Waiver days…" at issue in Plaintiff's preliminary position paper (Plaintiff's "PPP" is attached as **Exhibit D**), the Board's citation to and reliance on 42 C.F.R. §§ 405.1853(b)(2)-(3), 42 C.F.R. § 412.106(b), and Board Rules 25 and 27 to support its decision was arbitrary and capricious. (Ex. A-2 at 15). 42 C.F.R. §§ 405.1853(b)(2)-(3), in pertinent part, provides only:

> (2) Each position paper must set forth the relevant facts and arguments regarding ... the merits of the provider's Medicare payment claims for each remaining issue.

> (3) Exhibits regarding the merits of the provider's Medicare payment claims may be submitted in a timeframe to be decided by the Board through a schedule applicable to a specific case or through general instructions.

Nothing in the regulation requires a provider to identify listing of days with its preliminary position paper.

47.    Moreover, 42 C.F.R. § 412.106(b) pertains only to requirements for whether days should be counted *by the MAC* as Medicaid-eligible in a hospital's DSH calculation, not requirements for the Board's jurisdiction over the Provider's appeal. Similarly, neither Board Rule 25 nor 27 require identification of a listing of section 1115 waiver days.

48.    In Exhibit P-11 of the Provider's PPP, its protested items ***including an estimated amount of section 1115 waiver days and their estimated impact*** was included, meaning that the Provider did in fact "mention the 1115 Waiver days in its PPP," contrary to the Board's claim otherwise.

49.    Plaintiff, in support of the inclusion of section 1115 waiver days in its Medicaid Fraction, explained in its final position paper (attached as **Exhibit E**) that "CMS has acquiesced in *Bethesda* and is now following the statute and the plain meaning of its own regulations (which regulations represent the official policy of CMS all along) and [should be] properly accounting for 1115 Waiver days as Medicaid Eligible days. *See* CMS Manual Instructions System, Change

Request 12669, Transmittal No. 11912 (March 16, 2023) ('Transmittal 11912'), attached as Exhibit P-23." (Ex. D at 16).

50.    The D.C. Circuit's *Bethesda* opinion, as well as the *Forrest General Hospital* and *HealthAlliance Hospitals, Inc.* opinions cited as "well-reasoned" therein, directly support Plaintiff's claim regarding the merits of the inclusion of section 1115 waiver days in its Medicaid Fraction. *See Bethesda Health Inc. v. Azar*, 389 F. Supp. 3d 32 (D.D.C. 2019), *aff'd*, 980 F.3d 121 (D.C. Cir. 2020). CMS's acquiescence to the D.C. Circuit's holding in *Bethesda* in its March 16, 2023 publication further establishes the Board's jurisdiction over the section 1115 waiver days at issue as part of the Medicaid Eligible Days issue, contrary to the Board's assertion that it is a "distinct issue." (Ex. A-2 at 13).

51.    Finally, the Board's comparison of Plaintiff's language in its initial appeal and position papers to the provider's language in *Evangelical Community Hospital, et al. v. Becerra* misses the mark. Plaintiff does indeed "…specify which portion of the calculation was incorrect…" and "…how the fraction should have been calculated differently…" in its initial issue statement stating that, "[t]he MAC, contrary to the regulation, failed to include **all Medicaid eligible days**, **including but not limited to** Medicaid paid days, unpaid eligible days, eligible days adjudicated and processed after the cutoff date and all out of State eligible days in the Medicaid Percentage of the Medicare DSH calculation." (Ex. A-2 at 4; Ex. C at 11) (emphasis added).

52.    As stated *supra*, Plaintiff stated in its protested items (included with its initial appeal request and both position papers) that it was protesting the understatement of its "Medicaid fraction of the Medicare DSH payment calculation" due to the failure of the "Provider One verification system … to identify and count all patient days that can be deemed eligible for Title XIX inpatient hospital benefits" including "all 1115 waiver days." (Ex. A-2 at 15; Ex. C at 7; Ex.

D at 204; Ex. E at 219). The Provider goes on to display its calculation of the good faith estimated impact on its DSH calculation of "1% additional Medicaid eligible Days" per CMS's guidance with respect to appealing self-disallowed items found within its own regulations.[16]

53.    Further, Plaintiff stated in its final position paper that its "…issue is whether the [MAC] included in [the numerator of] the Provider's Medicaid Fraction of the disproportionate patient percentage all Medicaid eligible days (including section 1115 waiver days)," specifically stating that, "[b]ased on the Listing of Medicaid Eligible days being sent under separate cover directly to the MAC, including Section 1115 waiver days (redacted copy is attached), the Provider contends that the total number of days reflected in its 2016 cost report does not reflect an accurate number of Medicaid eligible days, as required by HCFA Ruling 97-2 and the pertinent Federal Court decisions." (Ex. E at 16). It is clear, therefore, that the provider's language criticized as lacking "…the requisite specificity…"[17] by the court in the *Evangelical Community Hospital* opinion is incomparable to Plaintiff's language in its initial appeal request and position papers, thus the Board's appeal thereto is arbitrary and capricious.

### E.    *Dismissal of DSH Payment - Medicaid Eligible Days Issue*

54.    The Board dismissed the DSH Payment - Medicaid Eligible Days issue, failing to offer its own position but presumably taking on the MAC's position in its FPP, stating that:

> the MAC requested the Board deny jurisdiction of the Medicaid Eligible days issue because: (1) the Provider failed to timely furnish documentation (e.g., a non-redacted listing of additional Medicaid days in support of its claim (or explain why such documentation is unavailable); and (2) the Provider did not fully address the issue in its final PP, nor did it clarify the estimated 998 days appealed are accurate. The MAC asserts that the PPs are perfunctory and clearly violate Board Rules 25 and 27, as well as 42 C.F.R. § 405.1835 (b)(2) as they fail to "set forth a fully developed narrative with relevant arguments, controlling authorities, and facts regarding the merits of the provider's claims

---

[16] *Id.*, 73 Fed. Reg. 30198 (May 23, 2008) ("…if the provider does decide to appeal the item, it should estimate the reimbursement effect of the item at that time.")
[17] No. 21-cv-01368, 2022 WL 4598546 (D.D.C. Sep. 30, 2022).

COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

on the Medicaid eligible days issue, and did not include all exhibits related to the issue." [MAC Final PP at 8 (Dec. 4, 2025).] Therefore, the MAC asserts that the Provider has essentially abandoned the issue by failing to properly develop its arguments and to provide supporting documents or to explain why it failed to produce those documents, as required by the Board Rules.

(Ex. A at 10-11).

F.    *The Secretary's Actions Violate the APA and Other Authorities*

55.    Under 42 U.S.C. § 1395oo(f)(1), an action brought for judicial review of final agency action involving PRRB appeals "…shall be tried pursuant to the applicable provisions under chapter 7 of title 5" of the U.S. Code, which contains the APA. Under the APA, a "…reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]" 5 U.S.C. § 706(2)(A). Further, a "…reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . unsupported by substantial evidence in a case . . . reviewed on the record of an agency hearing provided by statute[.]" 5 U.S.C. § 706(2)(E).

56.    Notwithstanding the fact that the Board did not even set forth its own position to explain its reasoning for dismissing Plaintiff's appeal of the DSH Payment - Medicaid Eligible Days issue, 42 C.F.R. § 1835(b)(2) does not contain the requirement cited by the MAC (and as it appears to have adopted the same position, the Board). 42 C.F.R. § 1835(b)(2) contains one of the requirements for the "Contents of ***request for a Board hearing*** on final contractor determination," and does not contain the language pertaining to position papers as claimed by the MAC and the Board.

57.    Plaintiff was compliant with PRRB Board Rules, which do not require identification of specific Medicaid eligible days. Board Rule 25 relates to the submission of documents necessary to support a provider's position. Board Rules specifically direct that

protected health information or other personally identifiable information "is generally not necessary for documentation submitted to the Board." Board Rule 1.4. Identification of specific Medicaid eligible days, while necessary for the MAC's ultimate <u>audit</u> of the Provider's claims, was not necessary for the PRRB's consideration of the <u>issue</u>.

58.    Furthermore, Plaintiff's preliminary position paper specifically listed the estimated reimbursement impact of the Medicaid Eligible Days issue as "$602,006." (Ex. D at 5). Additionally, Plaintiff stated that its claim "…that the total number of days reflected in its' [sic] 2016 cost report does not reflect an accurate number of Medicaid eligible days…" was "[b]ased on the Listing of Medicaid Eligible Days being sent under separate cover." (*Id*. at 17).

59.    Moreover, Plaintiff submitted a finalized redacted listing of Medicaid eligible days as "Exhibit P-21" of its FPP titled "Additional ME & 1115 Waiver Days." (Ex. E at 321-348).

60.    Notwithstanding the fact that identification of specific Medicaid eligible days is not necessary for the Board's adjudication, Plaintiff cannot be expected to produce a listing of days that have not yet been confirmed by the State. Plaintiff contends that it is a known frequent occurrence of providers reporting difficulties and delays in receipt of timely data and verifications requested from many state Medicaid agencies. Given that Plaintiff submitted its final position paper with a finalized listing of Medicaid eligible days, the Board had more than enough information to confirm jurisdiction and properly adjudicate the issue. Due to the Board's and MAC's flawed understanding of the inherent retroactive nature of Medicaid eligibility, it was arbitrary and capricious for the Board to disregard Plaintiff's submitted listing of additional Medicaid eligible days, adopt the MAC's argument as its justification for dismissing Plaintiff's appeal of the DSH Payment - Medicaid Eligible Days issue,  and dismiss Plaintiff's appeal.

COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

## Count I

### Judicial Review Under the Medicare Act and the APA

**(The Board's Dismissal of the Section 1115 Days "Sub-Issue" was Arbitrary, Capricious, an Abuse of Discretion, Otherwise Contrary to Law, and Unsupported by Substantial Evidence)**

61.     Plaintiff incorporates paragraphs 1-60 of this Complaint by reference.

62.     The APA prohibits agency action that is "…arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), or that is "…unsupported by substantial evidence." *Id.* § 706(2)(E).

63.     The Board's dismissal of the section 1115 waiver days component of its appeal relating to Medicaid eligible days was ultra vires, arbitrary, capricious, an abuse of discretion, and otherwise contrary to the Medicare Act.

## Count II

### Judicial Review under 28 U.S.C. § 1331 and the APA

**(The MAC's Determination was Arbitrary, Capricious, an Abuse of Discretion, Otherwise Contrary to Law, and Unsupported by Substantial Evidence)**

64.     Plaintiff incorporates paragraphs 1-63 of this Complaint by reference.

65.     The MAC's refusal to follow the clear dictates of CMS Manual Instructions System, Change Request 12669, Transmittal No. 11912 (March 16, 2023) and audit and accept the Plaintiff Hospital's section 1115 waiver days was a final determination for which there is no administrative appeal. Therefore, this Court has jurisdiction to hear Plaintiff's appeal of this final determination. *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667 (1986).

66.     The APA prohibits agency action that is "…arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), or that is "…unsupported by substantial evidence." *Id*. § 706(2)(E).

67.    The MAC's refusal to comply with the Manual Instructions, which bound the MAC, was arbitrary, capricious, an abuse of discretion, and contrary to the Medicare Act.

## Count III

### Due Process Violation

68.    Plaintiff incorporates paragraphs 1-67 of this Complaint by reference.

69.    It has a property right under the Fifth Amendment of the U.S. Constitution that requires the Secretary and the Secretary's agents to follow their own rules and give pre-deprivation and fair notice to the Plaintiff Hospital.

70.    By imposing an unlawful requirement that the Plaintiff specifically identify "Section 1115 waiver days" in its appeal request, the Board deprived it of due process because that requirement was contrary to the Secretary's regulations and because the Board's rules in effect at the time the Plaintiff Hospital filed its appeal request for a Board hearing did not give prior and fair notice of such a requirement.

## Count IV

### Mandamus

71.    Plaintiff incorporates paragraphs 1-70 of this Complaint by reference.

72.    Under 28 U.S.C. § 1361, federal district courts have "…original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

73.    The Secretary and its agents have the non-discretionary duty to apply properly the substantive and procedural laws relating to Medicare payment and the Board has the non-discretionary duty to apply properly laws relating to its jurisdiction.

74.     The MAC has refused to follow the clear dictates of CMS Manual Instructions System, Change Request 12669, Transmittal No. 11912 (March 16, 2023). These instructions require the MAC to accept audit and accept verified section 1115 waiver days for any appeal pending before the Board.

75.     The Manual Instructions provide an independent legal basis, outside of the appeal before the Board, for the Plaintiff Hospital's section 1115 waiver days to be included in the Medicaid Fraction of its Disproportionate Payment Percentage.

76.     Plaintiff Hospital has exhausted its administrative remedies by demanding that the MAC audit and accept verified section 1115 waiver days.

## Count V

### All Writs Act

77.     Plaintiff incorporates paragraphs 1-76 of this Complaint by reference.

78.     The DSH payment at issue violated the Medicare Act and APA. Under the All Writs Act, 28 U.S.C. § 1651(a): "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."

79.     This Court, properly seized of jurisdiction, should issue an order requiring CMS to make proper DSH payment to Plaintiff and pay appropriate underpayment interest thereon under 42 U.S.C. §§ 1395oo(f)(2), 1395g(d) and/or 1395l(j), and 42 C.F.R. § 405.378.

## Count VI

### Judicial Review Under the Medicare Act

**(The Board's Actions are Arbitrary, Capricious, an Abuse of Discretion, and Otherwise Contrary to Law because Rule 8 is Procedurally Invalid)**

80.     Plaintiff incorporates paragraphs 1-79 of this Complaint by reference.

COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

81.     Under 42 U.S.C. § 1395hh(b): "…the Secretary shall provide for notice of the proposed regulation in the Federal Register and a period of not less than 60 days for public comment thereon."

82.     As there was no public notice-and-comment period for Rule 8 of the August 21, 2008, version of the PRRB Rules, the August 29, 2018, version of Rule 8 acts as a logical extension of the initial publication of Rule 8, and Rule 8 was indeed a change in the "substantive legal standard" regarding payment for services under the Medicare Act, PRRB Rule 8 is invalid, and the Board's implementation of the August 29, 2018 version of Rule 8 in this case was arbitrary, capricious, an abuse of discretion, and otherwise contrary to law.

## Count VII

### Judicial Review Under the Medicare Act

### (Board Rule 8 and the Board's Application of it to Dismiss the Section 1115 "Sub-Issue" are Inconsistent with Regulation and Board Rule 7 and Not in Accordance with Law)

83.     Plaintiff incorporates paragraphs 1-82 of this Complaint by reference.

84.     The Board only has the authority to make rules and establish procedures that are not inconsistent with statute or the regulations of the Secretary and that are necessary or appropriate to carry out the statutory provision authorizing the Board.

85.     Any requirement to identify components of issues is not in accordance with law. Any such requirement is not "necessary or appropriate to carry out the provisions" of the Medicare Act authorizing the PRRB appeals process and is inconsistent with statute and regulation.

86.     Moreover, the Board's requirement that providers must identify "sub-issues" or "components" of issues arbitrarily and capriciously denies providers, including Plaintiff Hospital, the appeal rights to which they are entitled by statute.

COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

## Count VIII

### Judicial Review Under the Medicare Act and APA

**(The Board's Dismissal of the Medicaid Eligible Days Issue was Arbitrary, Capricious, an Abuse of Discretion, Otherwise Contrary to Law, and Unsupported by Substantial Evidence)**

87.     Plaintiff incorporates paragraphs 1-86 of this Complaint by reference.

88.     The APA prohibits agency action that is "…arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), or that is "…unsupported by substantial evidence." *Id*. § 706(2)(E).

89.     The Board's dismissal of the DSH Payment – Medicaid Eligible Days issue was arbitrary, capricious, an abuse of discretion, otherwise contrary to the Medicare Act, and unsupported by substantial evidence.

## Count IX

### Judicial Review Under the Medicare Act and the APA

**(The Board's Disregard of Plaintiff's Final Position Paper Filing was Arbitrary, Capricious, an Abuse of Discretion, Otherwise Contrary to Law, and Unsupported by Substantial Evidence)**

90.     Plaintiff incorporates paragraphs 1-89 of this Complaint by reference.

91.     The APA prohibits agency action that is "…arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), or that is "…unsupported by substantial evidence." *Id*. § 706(2)(E).

92.     The Board's total disregard of Plaintiff's final position paper filing was arbitrary, capricious, an abuse of discretion, otherwise contrary to the Medicare Act, and unsupported by substantial evidence.

COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

## <u>REQUEST FOR RELIEF</u>

For all the foregoing reasons, Plaintiff respectfully requests that this Court enter an Order:

a.   Reversing the Board's dismissal of the Medicaid eligible days issue and the section 1115 waiver days component of the appeal;

b.   Directing the Secretary to direct its MAC to audit Plaintiff Hospital's listing of section 1115 waiver and Medicaid eligible days, accept all verified days, and include them in the Medicaid Fraction of Plaintiff Hospital's DPP for purposes of its DSH Adjustment;

c.   Awarding Plaintiff Hospital's costs and reasonable attorneys' fees, and for interest pursuant to 42 U.S.C. § 1395oo(f)(2); and 42 U.S.C. § 1395g(d); and,

d.   For such other and further relief the Court deems just and proper.

Dated: May 23, 2026                          Respectfully submitted,

ALAN SEDLEY LAW CORPORATION

By: */s/ Alan J. Sedley*
Alan J. Sedley, Esq. Bay # OH0017
18880 Douglas, Suite 417
Irvine, CA 92612
Phone: 818.601.0098
asedley@sedleyhealthlaw.com

*Attorneys for Plaintiff*

COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT